**MIDLAND WEST CORPORATION,**
Plaintiff–Appellee,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its
corporate capacity,**

and

**Richard E. Anderson, as substitute trustee, Defendants–Appellants.**

No. 89–1725.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1990.

Rehearing Denied Oct. 18, 1990.

Stephen F. Fox, T. Ray Guy, David Ford Hunt, Jenkens & Gilchrist, Dallas, Tex., for defendants-appellants.

E. Link Beck, Steven C. James, Beck & James, El Paso, Tex., for plaintiff-appellee.

Before GOLDBERG, GEE and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC), as the successor in interest to the now defunct First National Bank of Midland (First National), appeals from a district court order denying its motion to reform an Order of Agreed Judgment forged between the FDIC, the Midland West Corporation, and L. Frank Mullins. We conclude that the motion to reform the judgment was timely filed and because the judgment did not reflect the express, mutual intent of the parties to the settlement, we hold that the district court should have granted the motion to reform; therefore, we reverse the order and remand to the district court to allow the parties to reform the judgment.

### Facts

In 1982, plaintiff-appellee Midland West Corporation executed and delivered two promissory notes payable to First National, one in the principal amount of $8,946,311 and the other in the amount of $3,100,000. The notes were due and payable on December 15, 1983. Midland West used the proceeds from the larger loan to develop a parcel of real estate known as the Green

Tree Property. The smaller note furnished funds for various oil and gas programs. Concurrently with the execution of these notes, L. Frank Mullins and Edmund R. Rigatti each executed separate guaranty agreements and delivered the agreements to First National. Mr. Mullins guaranteed payment of the lesser of $8,431,252 or 69% of Midland West's outstanding debt and Mr. Rigatti guaranteed the lesser of $2,812,682 or 28% of the same debt. In addition, First National secured the note with five deeds of trust executed by Midland West covering various properties held by Midland West, including the Green Tree property.

As was the case with other oil and gas and Texas real estate investors, 1983 proved to be a disastrous year for Midland West and First National. Midland West was unable to repay the notes on their December 15th due date. First National was declared insolvent, and the FDIC was appointed receiver. In its role as receiver, the FDIC conveyed various First National assets to itself in its corporate capacity, including the two promissory notes, the two guarantees and the five deeds of trust arising from the Midland West transaction. Under a subsequent workout agreement, the FDIC extended the maturity dates of the notes to August 29, 1986; but on arrival of that date Midland West once again failed to pay the notes. On September 30, 1987, the FDIC demanded payment from Midland West and called on each guarantor to honor his guarantee. Midland West, Mr. Mullins, and Mr. Rigatti refused.

In July 1988, the FDIC filed suit in federal court against the guarantors and posted the Green Tree properties for non-judicial foreclosure. Midland West filed suit against the FDIC in state court to prevent the foreclosure and obtained relief in the form of a temporary restraining order. The FDIC removed the state court suit to federal court, and the district court consolidated the two cases.

During the pendency of the consolidated lawsuit, the FDIC, Midland West and Mr. Mullins settled their dispute. Similar efforts to settle with Mr. Rigatti were unsuc-cessful and, as a result, the district court severed the FDIC's suit against Mr. Rigatti in order to allow the FDIC to complete its negotiations with Midland West and Mr. Mullins.

On May 11, 1989, the FDIC, Midland West and Mr. Mullins entered into a compromise settlement agreement. The FDIC maintains, and Midland West and Mr. Mullins do not dispute, that the parties intended the agreement to provide for (1) the FDIC to receive all of Midland West's current assets of value; and (2) for Mr. Mullins to pay the FDIC an amount in excess of what the FDIC could have recovered from him by way of a judgment. In the settlement agreement, Midland West concedes that the promissory notes were due and payable and relinquishes all claims against the FDIC, both in its corporate capacity and as receiver. The agreement further provides that Midland West and Mr. Mullins release all claims against the FDIC. In return, the FDIC released its claims against Mr. Mullins. The agreement explicitly states, however, that it is not a release of claims that the FDIC has against Midland West, but merely a covenant not to sue upon them—except for any necessary judicial foreclosures. The specific language in the settlement agreement explains: "This covenant not to sue Midland West Corporation is not and shall not be interpreted as an extinguishment, settlement, or release of the debts represented by the notes or of any debts secured by any collateral pledged to the FDIC by or on account of Midland West."

The agreement further required that the parties file an Order of Agreed Judgment with the district court, reflecting the essential terms of the settlement agreement and dismissing the suit with prejudice. Accordingly, the parties filed the order, and it was granted by the district court on May 26, 1989.

The settlement agreement also contained a late-hour addition to its wording, providing: "The FDIC agrees that the judicial foreclosure of its Deed of Trust lien, and any other foreclosure and/or conveyance provided for herein, will be in full satisfac-

tion of the money judgment set forth in the Agreed final judgment." This sentence was proposed by counsel for Midland West to alleviate the company's concerns that the FDIC could attach future acquired assets and capital pursuant to the agreement and its accompanying judicial decree.

Five days after the district court entered the Order of Agreed Judgment, the court granted a motion for summary judgment filed by Mr. Rigatti in his severed suit against the FDIC. The disposition by our Court of this companion case is set forth in *Federal Deposit Insurance Corp. v. Rigatti*, 911 F.2d 1145 (5th Cir.1990). Although the district court did not state the ground on which the summary judgment was granted, the FDIC interpreted the order to mean that the "full satisfaction" language added at the last minute to the settlement agreement with Midland West and Mr. Mullins unintentionally served also to discharge Mr. Rigatti from liability on his guarantee. Thus, on June 6, 1989, the FDIC moved for a reformation of the settlement agreement in order to amend it to reflect the true intention of the parties. The district court denied the FDIC's motion and the FDIC appeals this denial to our court.

## I.

██ Before deciding whether the FDIC's motion to reform the judgment was properly denied, we must determine whether the notice of appeal in this case was timely filed. We conclude that it was. Midland West contends that our court lacks jurisdiction over this appeal because the FDIC failed to file a notice of appeal from the Agreed Final Judgment within the 60–day limitation on appeals set forth in Federal Rule of Appellate Procedure 4(a)(1).[1] The FDIC, however, is not seeking a reversal of the Agreed Final Judgment, but is appealing the denial of its motion to reform the judgment.[2] The relevant rule governing motions to amend or alter a judgment—a class in which the FDIC's motion may properly claim membership—is Federal Rule of Civil Procedure 59(e). Rule 59(e) requires that a motion to alter or amend a judgment be served not later than ten days after entry of the judgment.

Guided by Rule 59(e), the FDIC filed its motion to reform the judgment with the district court on June 6th, well within the ten day time limit.[3] The sixty day time limit for filing a notice of appeal did not begin to run, therefore, until June 7th—the date the district court denied the FDIC's motion to reform. Any appeal filed by the FDIC prior to the district court's denial of the motion to reform would have been a nullity because a case lacks finality until the district court disposes of a timely made Rule 59 motion. *Turner v. HMH Publishing Co.*, 328 F.2d 136, 137 (5th Cir.1964). Using June 7th as the proper beginning date for the 60–day window, the FDIC timely filed its notice of this appeal on August 7, 1989—the 60th day, August 6, having fallen on a Sunday in that year. See Rule 6(a), Fed.R.Civ.P.

## II.

██ Turning to the merits of the FDIC's appeal, we conclude that the district court

1. Federal Rule 4(a)(1) states in relevant part: "In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry."

2. As Midland West discusses in its brief, the conclusion and prayer for relief in this appeal drafted by the FDIC is misleading, as it asks that the original judgment be reversed and that the

motion to reform the judgment be granted. Midland West, however, honorably concedes that it has not been prejudiced by this misstatement; and counsel for FDIC subsequently clarified the basis for its appeal in a letter filed with the court.

3. Federal Rule of Civil Procedure 6 provides that for motions for which the time allowed to respond is less than 11 days, intermediate Saturdays, Sundays, and legal holidays are excluded from the computation. In filing its motion, the FDIC benefitted from two weekends and the Memorial Day holiday and thus could have filed its motion to reform the judgment as late as June 12.

erred in denying the FDIC's motion to reform the settlement agreement. Our circuit has not ruled upon the standard of review for the denial of a Rule 59(e) motion. We have, however, held that the decision whether to modify a consent decree under Federal Rule of Civil Procedure 60(b) lies solely within the discretion of the trial court. *Ruiz v. Lynaugh*, 811 F.2d 856, 861 (5th Cir.1987). Noting the considerable overlap between Rule 59(e) and Rule 60(b), we hold that the standard of review for denial of a Rule 59(e) motion is abuse of discretion.[4] Under this standard, the district court's decision and decision-making process need only be reasonable. *Ruiz*, 811 F.2d at 861.

In today's case we conclude that in denying a motion to reform a judgment to reflect the intent of all of the parties without stating the basis for denying it, the district court did not meet this standard. Texas law favors reformation of agreements to reflect the intention of the parties correctly. See *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 67 (1959); *Weaver v. First National Bank of Amarillo*, 532 S.W.2d 416, 417 (Tex.Civ.App.—Waco 1976, no writ). Midland West and the FDIC agree that at no time during the settlement negotiations and the course of this appeal did they ever intend to release the FDIC's claims against Midland West. The agreement itself explicitly states this intention and incorporates a covenant not to sue, not a release. If language inserted in the agreement mistakenly vitiates this intent, then the FDIC should be allowed to reform the judgment. See *Ibarra v. Texas Employment Com'n*, 823 F.2d 873, 879 (5th Cir.1987) (holding that the district court abused its discretion in approving a consent decree when one party sought to avoid it on the basis of a material mistake).

Our holding should not be read to mean that parties who err in drafting a settlement agreement to reflect their intent accurately are invariably *entitled* to reform it; but because the district court's order

offers no reason or basis for denying the timely filed motion to reform for a conceded mutual mistake and none is apparent to us, we find error. Thus, we REVERSE and REMAND to the district court for reformation of the judgment.

REVERSED and REMANDED.

---

4. *See* Wright & Miller, Federal Practice & Procedure: Civil § 2817 at 110 (1973). While the case before us today was under our consideration, our circuit decided *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167 (5th Cir.1990), in which we adopted an abuse of discretion standard for a Rule 59(e) motion to file new evidentiary materials after a summary judgment had been rendered. We extend this standard to motions to reform or amend a judgment pursuant to Rule 59(e).