United States Court of Appeals,

Fifth Circuit.

No. 93-3252

Summary Calendar.

SOUTHERN CONSTRUCTORS GROUP, INC., Plaintiff-Appellant,

v.

DYNALECTRIC COMPANY, Defendant-Third Party Plaintiff-Appellee,

v.

Allen R. BOUDREAUX, Third Party Defendant-Appellant.

Sept. 27, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before: JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

This case illustrates the preclusive consequences flowing from failure to provide proper notice of a possible theory of recovery. Plaintiff-Appellant Southern Constructors Group, Inc. ("Southern") sued Defendant-Appellee Dynalectric Company under various claims that were all predicated on the existence of a contract. The case was eventually submitted to arbitration. After receiving notice that the arbitration panel had failed to find a contract, Southern attempted to switch to a quasi-contract theory of recovery grounded in quantum meruit. The district court held that Southern had waived these claims by failing to include them within any of its original or amended complaints or even in the pretrial order. Southern appeals this conclusion. Southern also appeals the district court's refusal to grant it leave to amend its complaint to add the quasi-contract claim. Concluding that the district court properly found waiver and did not abuse its discretion in refusing to allow amendment of the complaint to include the waived claims, we affirm.

I

FACTS AND PROCEEDINGS

This case arises out of events following the bankruptcy of MMR Holding Company, Inc.

("MMR"), a large national electrical and mechanical contractor. MMR's bankruptcy led to default on all of its bonded work, which in turn placed responsibility for completion of this work on MMR's surety, Aetna Casualty and Surety Company ("Aetna"). Allen R. Boudreaux, a former vice-president of MMR and owner and president of Southern, contacted Dynalectric about acquiring the contracts for completing all of MMR's electrical work from Aetna. What transpired next is the subject matter of the present suit. Boudreaux claims that his expertise and connections led to the awarding of approximately $120 million of completion contracts to Dynalectric, and that Southern and Dynalectric entered into an agreement to split the profits of these contracts 807 to Dynalectric and 207 to Southern. Disputing that version of the facts, Dynalectric claims that it broke off negotiations with Southern before a contract was formed because it had learned that several of Boudreaux's representations were inaccurate and that Southern was merely a shell company without any track record or employees.

Southern brought suit against Dynalectric in August of 1990. In the second amended complaint, the operative one for this litigation, Southern alleged that Dynalectric breached its contractual and fiduciary duties, and engaged in unfair trade practices and fraud. Southern's claims included the standard prayer that it be awarded "any other just and equitable relief this Court may deem appropriate." All of the claims were apparently predicated on proof of the existence of a contract between Southern and Dynalectric.[1] When extensive discovery was complete it became clear that the existence of the contract turned on the enforceability of a draft agreement containing an arbitration provision. Thus Southern faced the prospect of submitting to two separate proceedings—a jury trial to determine the existence of a contract; and then, only if a contract were found, an arbitration proceeding to determine whether damages were due under that contract.

Instead of incurring the costs and delays of both a trial and an arbitration proceeding,

---

[1]Although Southern contends that its complaint implicitly includes additional claims of quasi-contract, it has not disputed Dynalectric's assertion that the breach of contract, breach of fiduciary duty, unfair trade practices, and fraud claims presuppose the existence of a contract. Moreover, Southern's actions in conditioning the arbitration of those claims on whether a contract existed indicates that Southern believed those claims were valid only if there were a contract.

Southern and Dynalectric agreed to submit all issues in this dispute to arbitration.[2]  The agreement to arbitrate provided, inter alia, that an earlier pretrial order confected by Southern and Dynalectric would control the arbitration "to the extent practicable," and that the first stage of the arbitration would consider only whether a contract existed.  If no contract were found the arbitration would be over and either party could seek to confirm or appeal the decision of the arbitration panel.  Only if a contract were found to exist would the arbitration proceed to the second stage, determining whether and to whom damages were owed under the various contractual claims.

The arbitration panel conducted four days of formal hearings at which the parties presented numerous witnesses, depositions, and exhibits.  In its initial decision the majority of the arbitration panel found that no contract existed between Southern and Dynalectric.  Only after it learned of this decision did Southern raise the issue of its entitlement to recover under a quasi-contract theory.  Southern raised that issue by filing a Motion to Reconsider with the arbitration panel.  The majority of the panel concluded that this motion raised issues beyond the scope of the panel's authority and accordingly refused to reconsider the decision.[3]  Dynalectric filed a Motion to Confirm the Arbitration Award, which was granted by the district court.

Southern filed a timely motion with the district court to reconsider its decision confirming the arbitration award.  In its motion Southern contended that the district court should hear the quasi-contract issues because the arbitration panel refused to resolve those claims.  The district court reviewed the amended complaint and pretrial order, but concluded that Southern had waived the quasi-contract claims by failing to raise them in a timely manner.  The district court subsequently entered judgment for Dynalectric confirming the arbitration award.

After entry of judgement Southern filed a timely motion pursuant to FED.R.CIV.P. 59(e) to vacate the judgment and to grant leave to Southern to file a third amended complaint under

---

[2]Dynalectric filed a counterclaim against Southern and a third party complaint against Southern's owner, Boudreaux.  Dynalectric has not appealed the judgment by the district court dismissing those complaints with prejudice.

[3]Southern does not directly challenge on appeal the arbitrators' conclusion that the quantum meruit and quasi-contract claims were beyond the scope of the agreement to arbitrate.

FED.R.CIV.P. 15. The third amended complaint would have added Boudreaux as a party plaintiff and would have included quasi-contractual claims. The district court denied this motion concluding that: 1) it was correct in finding that Southern had waived the quasi-contract claims by failing to raise them until after it lost its case at arbitration; and 2) granting the motion would be unfairly prejudicial to Dynalectric in subjecting it to renewed litigation when Dynalectric had a reasonable and justifiable expectation that the arbitration had conclusively resolved its dispute with Southern. Southern timely appealed.

II

ANALYSIS

Southern advances two arguments to challenge the district court's entry of judgment and refusal to allow Southern to amend its complaint. First, Southern argues that the district court erred when it found that the quasi-contract claims had been waived. In short, Southern argues that the claims were implicitly included (and thus not waived) within the relevant pleadings. Second, Southern contends that the district court abused its discretion in refusing to grant Southern leave to amend its complaint to add the quasi-contract claims. We analyze each of these arguments in turn.

A. *Waiver and Notice Pleading*

Southern argues that its claims in quasi-contract were included within the second amended complaint because this complaint contained allegations of facts that would lead to recovery under this theory, coupled with a prayer for relief that included a request for "any other just and equitable relief this Court may deem appropriate." According to Southern, this entitles it to relief under FED.R.CIV.P. 54(c), which provides in pertinent part that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."[4]

Southern's argument is based on a misapprehension of how notice pleading operates under the federal rules. Under one version of this argument Southern is positing that quasi-contract is merely a form of relief, such as equitable relief in an Age Discrimination in Employment Act claim

---

[4]FED.R.CIV.P. 54(c).

or a declaratory judgment in a damages action.[5]  Such analogies are clearly inapposite.  At least in Louisiana,[6] quasi-contract is one of four general categories of obligations:  contract;  delict (tort);  quasi-contract;  and quasi-delict.[7]  Each imposes liability based on a party's proof that he or she has satisfied the requisite factual elements.[8]  In short, quasi-contract is a doctrine used to impose liability.  Classification of quasi-contract as a liability doctrine forecloses this appeal to Rule 54(c), for as we held in *Flannery v. Carroll,*[9] Rule 54(c) is limited to allowing a court "to order appropriate relief; it does not permit [a] court to impose liability where none has been established."[10]

Southern, under another version of its argument, urges that a party may be entitled to recovery under any legal theory that would fit allegations of fact contained in the operative pleadings.  Southern contends that this rule would apply even after extensive discovery and a pretrial order have been used to narrow the facts and relevant legal issues for trial, or, as in the present case, arbitration.

Adoption of Southern's blind-hog-occasionally-finds-an-acorn approach would play havoc with trial procedure and would negate the narrowing and winnowing process that occurs under the

---

[5]Southern cites to, among other cases, *Doss v. South Central Bell Telephone Co.,* 834 F.2d 421, 425 (5th Cir.1987) (reversing dismissal even though plaintiff had failed to request equitable relief under the ADEA) and *Dotschay v. National Mutual Insurance Co.,* 246 F.2d 221 (5th Cir.1957) (reversing a dismissal of a damages action when the plaintiff had a viable claim for declaratory relief) to support its argument that *relief* is not waived even when it is not specifically requested.

>	While we agree with Southern that the relief need not always be specifically enumerated in its prayer, we disagree with Southern's implied characterization of quasi-contract as merely a variation of relief.

[6]Southern has argued to the district court that Louisiana law applies to its quasi-contract claims.  We will assume, for purposes of this appeal, that Southern's choice-of-law contention is correct.

[7]*See* LA.CIV.CODE ANN. art. 2292.

[8]*See e.g. Smith v. Hudson,* 519 So.2d 783, 786-87 (La.App.1987) (discussing and applying quasi-contract as a liability doctrine and enumerating the elements of a quasi-contract claim).  In *Smith* the court explained the relationship between quasi-contract and quantum meruit: quasi-contract is the basis for liability under the Civil Code (article 2293), while quantum meruit provides the measure of recovery.  *Id.;  see also, Fullerton v. Scarecrow Club, Inc.,* 440 So.2d 945, 949-50 (La.App.1983) (stating same).

[9]676 F.2d 126 (5th Cir.1982).

[10]*Id.* at 132.

present federal rules.[11] Although we have been willing to construe pleadings liberally at the pretrial stage, thus allowing a party to engage in discovery to develop theories of liability,[12] we have never construed notice pleading as broadly as Southern wishes. Put simply, Southern asks us to grant carte blanche to a litigant to throw facts at the court, while placing responsibility on the court—not the litigant—to sort through those facts and come up with possible theories for recovery. Such an approach would controvert our jurisprudence on pretrial orders, which includes the rule that any claim omitted from the pretrial order is deemed waived.[13] It would also render nugatory any concept of relevancy contained in the Federal Rules of Evidence.[14]

The fact that the adjudicatory process here was arbitration instead of trial fails to justify absolving Southern of the rules we have applied to trials. Reduced to the essentials, Southern was doing nothing less than asking the district court to give it a second chance. Southern asked permission to bring a claim that was not presented to—and that Southern had effectively agreed could not be presented to—the arbitration panel. One consequence of adopting Southern's approach would be to undermine the efficacy of arbitration agreements and awards.[15] Another would be to add to the

---

[11]*See e.g. Simon v. United States,* 891 F.2d 1154, 1158 (5th Cir.1990) (noting that the pretrial order provides needed notice of the relevant issues for trial and discussing how the pretrial order is used to control the scope and course of the trial); *Flannery,* 676 F.2d at 129 (discussing how pretrial order, which determines which claims will actually be tried, narrows the course of the trial and expedites the proceeding).

[12]*E.g., Dussouy v. Gulf Coast Invest. Corp.,* 660 F.2d 594, 597-600 (5th Cir.1981) (reversing dismissal under Rule 12(b)(6) so that the plaintiff could pursue a conspiracy theory with different participants); *Doss,* 834 F.2d at 422 (reversing dismissal under Rule 12(b)(6) so that the plaintiff could seek equitable relief).

[13]*E.g. Valley Ranch Dev. Co. v. FDIC,* 960 F.2d 550, 554 (5th Cir.1992); *Flannery,* 676 F.2d at 129.

[14]Relevancy requires that the evidence relate to a "fact of consequence" under FED.R.EVID. 401. The trial court would be unable to ascertain what is "of consequence" in a dispute unless the court has some idea of the various legal theories that the parties are pursuing.

[15]We have stated that the Federal Arbitration Act ("FAA"), 9 *U.S.C.* §§ 1-15, is a congressional declaration of a national policy in favor of arbitration. *E.g. Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1061 (5th Cir.1990) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). To effectuate that policy we have recognized that courts must engage in a deferential review of arbitration decisions, a review that avoids unnecessary intrusion into questions settled by the arbitration process so as to avoid upsetting the efficiency of that process. *Anderman/Smith*

already crowded dockets of our district courts, instead of finding ways to ease them. Southern can offer no viable reason to accept these disfavored consequences other than the harm it caused itself by failing timely to assert its quasi-contractual claims on the merits. Clearly these preclusive harms are self-inflicted, the result of Southern's own litigation strategy. We cannot bend or break the rules—and set harmful precedent—simply to achieve what one party perceives to be a "just result" in one case.

B. *Amending a Complaint After Judgement*

Southern asserts as its second ground for reversal that the district court abused its discretion when it denied Southern's motion to vacate, alter, or amend its judgement under Rule 59(e). Southern's announced reason for this motion was to be able to file an amended complaint under Rule 15 so as to add quasi-contract claims.

Denial of a motion to vacate, alter, or amend a judgment so as to permit the filing of an amended pleading draws the interest in finality of judgments into tension with the federal policy of allowing liberal amendments under the rules. A threshold question is whether we are reviewing the denial under the standards applicable to Rule 59(e)—which favor the denial of motions to alter or amend a judgment[16]—or under Rule 15—which favor granting leave to amend.[17] Under either rule

*Operating Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990), *cert. denied ---- U.S. ----, 111 S.Ct. 2799, 115 L.Ed.2d 972 (1991).

Southern's challenge to the district court's waiver ruling is an indirect attempt to avoid the consequences of its agreement to arbitrate. In short, Southern seeks to circumvent the arbitration process by: 1) agreeing to submit *all* disputes to arbitration, 2) agreeing to condition all claims in that arbitration on proof of the existence of a contract, and then 3) bring the non-contract claims before the district court. By bringing these claims in district court, Southern would be able to avoid the explicit terms of its arbitration agreement, a result that would clearly be at odds with our mandate to enforce those agreements. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225-26, 107 S.Ct. 2332, 2336-37, 96 L.Ed.2d 185 (1987) (stating that the FAA was intended to make arbitration agreements enforceable to the same extent as any other contract).

[16]*See Simon,* 891 F.2d at 1159 (noting that motions to alter or amend a judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and that such motions should not be used to argue a case under a new legal theory).

[17]*E.g. Dussouy,* 660 F.2d at 597-98 (stating that Rule 15 evinces a bias in favor of granting leave to amend).

we review the district court's decision only to determine whether it was an abuse of discretion.[18]

While we have held that the Rule 15 standards apply when a party seeks to amend a judgment that has been entered based on the pleadings,[19] we seriously doubt whether these liberal standards would apply to amendment of a judgment after trial or, as here, after completion of arbitration.[20] We need not resolve this issue today, however, as we conclude that the district court's decision to deny Southern's motion was not an abuse of discretion even under the more liberal standards applicable to Rule 15.

In construing Rule 15 we have concluded that a district court's discretion is limited because Rule 15 evinces a bias in favor of granting leave to amend.[21] In *Dussouy* we stated:

> The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.[22]

We have also stated, however, that leave to amend under Rule 15 is by no means automatic,[23] and we have affirmed denials when the moving party engaged in undue delay[24] or attempted to present theories of recovery seriatim to the district court.[25]

---

[18]*E.g. Little v. Liquid Air Corp.,* 952 F.2d 841, 846 (5th Cir.1992) (noting that the decision to deny or grant leave to amend under Rule 15 lies within the sound discretion of the trial court); *Midland West Corp. v. FDIC,* 911 F.2d 1141, 1145 (5th Cir.1990) (holding that denial of a Rule 59(e) motion is reviewed for an abuse of discretion).

[19]*Id.* at 597 n. 1.

[20]*Cf. Dussouy,* 660 F.2d at 598 n. 2 (discussing how interest in finality becomes more compelling after a litigant has had some type of hearing on the merits of his claim); *Union Planters Nat. Leasing Inc. v. Woods,* 687 F.2d 117, 121 (5th Cir.1982) (noting that the interest in finality become more compelling after a court has decided a motion for summary judgment).

[21]*Dussouy,* 660 F.2d at 597.

[22]*Id.* at 598 (citations omitted).

[23]*E.g., Little,* 952 F.2d at 846.

[24]*Id.* at 846-847 (concluding that the district court did not abuse its discretion in denying the leave to amend when the plaintiff sought to amend over one year after they had instituted their action and several months after discovery had been effectively terminated).

[25]*Union Planters,* 687 F.2d at 121 (concluding that district court did not abuse its discretion in denying leave to amend after it had granted summary judgment in favor of the defendants and

Southern's attempt to amend its complaint was nothing more than an attempt to try its theories of recovery seriatim. After conditioning all of its theories of recovery on the existence of a contract—and losing conclusively on this issue at arbitration—Southern wished to amend its complaint to try a different tack by claiming that it was entitled to recovery under quasi-contract.[26] The fact that the first theory was tried at an arbitration proceeding, while the second would be tried in a court of law, fails to provide a justifiable distinction for ignoring the policy against allowing litigants to assert their claims in series. By applying this anti-seriatim policy to the arbitration award in the instant case, we protect the efficacy of that award[27] while we avoid adding to the already burgeoning dockets of the district courts. As we concluded in an earlier case,[28] a district court need not subject itself to the presentation of theories seriatim: We perceive no justification for not applying that rule to the instant case.

### III

### CONCLUSION

Southern suffered its loss after a full arbitration on the merits of its claims. The arbitration was consented to by Southern and was one in which Southern unequivocally agreed to condition its recovery on the existence of a contract. Only after losing on the contract issue did Southern attempt to proffer new grounds for recovery, and only after judgment did Southern attempt to amend its complaint. As the district court aptly noted in rejecting Southern's attempt to retry its dispute: "Unfortunately for Southern, its train has not merely left the station—it has already reached its

---

noting that a busy district court need not allow itself to be imposed on by the presentation of theories seriatim).

[26]Southern has failed to provide any satisfactory explanation for its failure to assert these theories in the alternative at the time it asserted its contract claims. The only justification that can be extracted from Southern's brief is that Southern mistakenly assumed the quantum meruit and quasi-contract claims were raised by its amended complaint. This error of law fails to constitute a sufficient reason to subject Dynalectric, and the court system, to another adjudication on the merits.

[27]See *supra,* note 14, for a brief discussion of the federal policy in favor of enforcing arbitration agreements and awards.

[28]*Union Planters,* 687 F.2d at 121.

destination and discharged its cargo."

As we conclude that the district court properly found that Southern waived its quasi-contract claims by failing to raise them in a timely fashion, and that the di strict court did not abuse its discretion in denying Southern's attempt to amend its complaint to include those claims, the judgment of the district court is AFFIRMED.