**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-30382

(Summary Calendar)
_____


RITA M. KENT,

                              Plaintiff-Appellant,

versus


THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE
OF NEW ORLEANS doing business as St. Ann
School,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(96-CV-1505-N)

_____

September 11, 1997
Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

    Rita Kent contends that the district court erred in

determining that no triable issue existed over whether her former

_____

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

employer's nondiscriminatory reasons for not rehiring her were pretextual.  We affirm.

I

Rita Kent worked as an elementary school teacher at St. Ann School ("St. Ann") for twelve years during the period from 1979 to 1994.  St. Ann, which is owned and operated by the Roman Catholic Church of the Archdiocese of New Orleans ("Archdiocese"), rehires its teachers each year.

In 1984, doctors diagnosed Kent as suffering from chronic venous stasis of the lower extremities, a condition that prevented her from standing or walking for long periods of time.  Kent's venous stasis worsened as she became pregnant with her fourth, fifth, and sixth children, who were born, respectively, in 1989, 1992, and 1993.  While pregnant with her fifth child, Kent did not teach during the 1991-92 school year.  She returned to St. Ann for the 1992-93 school year but then left half way through when she became pregnant with her sixth child.  In January 1994, Kent's doctor released her to return to teaching.  But Kent did not immediately return to St. Ann because it was the middle of the school year.

Monsignor Charles E. Duke, then pastor of St. Ann, was apparently the ultimate authority at the school.  However, based on his deposition testimony, he seemed to leave the decision to hire

-2-

or fire St. Ann teachers to the school's principal. Susan Kropog became principal at St. Ann starting with the 1994-95 school year. Before that, Kropog had worked as a teacher at the school from 1980 to 1988 and as assistant principal from 1988 to 1994. As assistant principal, Kropog supervised Kent and had the chance to watch her teach. Early in 1994, Kropog told Kent that St. Ann would not rehire her. Instead, Kropog planned to hire Stephanie Raziano, the woman who had replaced Kent when she left during the 1992-93 school year. Raziano, though, had already decided to move to another state. Kropog then solicited fifty to seventy-five job applications from qualified candidates for the position. From these applications, Kropog hired Leslie Bruno, a woman with eleven years of teaching experience whom Kropog considered better qualified than Kent.

Subsequently, Kent sued the Archdiocese, alleging that St. Ann violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and that St. Ann breached an oral contract under Louisiana law. The district court then granted the Archdiocese's summary judgment on Kent's ADA claim and declined to exercise supplemental jurisdiction over Kent's breach-of-contract claim pursuant to 28 U.S.C. § 1367(c)(3).

II

We review a district court's grant of summary judgment *de novo*. *New York Life Ins. Co. v. The Travelers Ins. Co.*, 92 F.3d

336, 338 (5th Cir. 1996).  In doing so, we employ the same criteria as the district court, and construe all facts and inferences in the light most favorable to the nonmoving party.  *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 268 (5th Cir. 1992).  Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

III

-4-

On appeal, Kent argues that the district court erred in granting the Archdiocese's motion for summary judgment. Specifically, she asserts that the district court mistakenly found that there was no genuine dispute of material fact over whether St. Ann's nondiscriminatory reasons for declining to rehire her were pretextual.

The Supreme Court has established an elaborate three-prong test))complete with shifting burdens of proof and persuasion))to determine if a plaintiff can show an ADA violation. *See generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). Only the third prong is at issue in this appeal. Under this prong, the plaintiff must demonstrate that the defendant's articulated rationale was merely a pretext for discrimination. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc). The plaintiff may do so by coming forward either with direct or circumstantial evidence of discriminatory intent. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). In sum,

> a jury issue will be presented and a plaintiff can avoid summary judgment . . . if the evidence taken as a whole (1) creates a fact issue as to whether *each* of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [disability] was a determinative factor in the actions of

> which plaintiff complains. The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

*Rhodes*, 75 F.3d at 995 (emphasis added).

St. Ann offered two nondiscriminatory reasons for not rehiring Kent. First, Kropog states that she thought that Bruno was better qualified than Kent. Second, Kropog claims that, based on her ten years experience working with or supervising Kent, she believed that Kent had a poor attendance record and other professional shortcomings. As support for this conclusion, Kropog averred that (1) she had personal knowledge of Kent's abilities as a teacher and frequent absences and tardiness, (2) she was aware that a former St. Ann principal had criticized Kent's teaching, (3) Kent offered to tutor students for pay after school, which Kropog regarded as inappropriate, (4) Kent paced her social studies class too slowly, (5) Kropog met with Kent in 1993 and told her that it was unprofessional to discuss another teacher with a parent, that Kent's classroom pace was too sluggish, and that Kent might not be challenging her students, and (6) Kropog believed Kent was an "undesirable employee" and did not consider Kent's disability in deciding not to rehire her.

Kent cannot muster any direct proof of discriminatory intent. However, she points to circumstantial evidence. First, Kent states that her supervisors, including Kropog, gave her many favorable written performance appraisals. Second, she claims that Kropog was

-6-

willing to provide a positive, written evaluation to Kent after declining to rehire her. Third, Kent notes that she had previously been rehired almost a dozen times at St. Ann. Fourth, Kent avers that the only school year in which she used up more than her allotted number of sick days was 1989-90, and that she was rehired twice more after that. Moreover, Kent asserts that Kropog admits that the school did not keep track of tardiness, and Kent claims that she was late to school just several times during her twelve years at St. Ann. Fifth, while Kropog maintains that she did not know about Kent's disability, Kent claims that she told Kropog at least three times about her health problems. Also, Father Duke testified that he knew that Kent "wasn't as well as she could be," and that "I would have been under the impression that with [Kent's] situation it might have been very difficult for her to come back and teach" because of "[t]he number of children she had, the health problems she had, et cetera . . . ." When asked by Kent's attorney whether Kropog "ever mention[ed] to you that [Kent's] health problems was [sic] one of the factors in not asking her to return . . .," Duke replied "[c]ould have been. I don't remember." Sixth, St. Ann declined to rehire Kent for the school year immediately after she had to leave St. Ann mid-year for health reasons. Seventh, Kropog stated that a parent, Suzanne Cornibe, visited her and told her that Kent had complained about another teacher. However, Cornibe testified that she never spoke to Kropog.

We first consider St. Ann's contention that Kropog decided not to rehire Kent because she thought that Bruno was better qualified. With regard to this proffered nondiscriminatory reason, Kent offered the district court little, if any, evidence to suggest that the reason was pretextual. In fact, Kent did not even present Bruno's St. Ann employment application to the court until *after* it granted the summary judgment motion; Kent attached the employment application to its motion to alter and amend the district court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and, on this basis, argued that Bruno "was not better qualified than . . . Kent."

The district court denied Kent's motion to alter or amend the judgment, but it did not mention Bruno's employment application in its order. We review the denial of a Rule 59(e) motion for abuse of discretion. *Batterton v. Texas Gen. Land Office*, 783 F.2d 1220, 1225 (5th Cir.), *cert. denied*, 479 U.S. 914, 107 S. Ct. 316, 93 L. Ed. 2d 289 (1986).

We have stated that Rule 59(e) "motions serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted); *accord Southern Constructors Group, Inc. v. Dynalectric* Co., 2 F.3d 606, 611 n.16 (5th Cir. 1993); *Simon v. United States*, 891 F.2d 1154, 1159 (5th

Cir. 1990). Kent concedes in her brief that the Bruno document is not "newly discovered evidence." We agree. And we also determine that the district court did not make a manifest error of law or fact warranting correction. Therefore, the district court did not clearly err in denying Kent's Rule 59(e) motion, and the Bruno employment application is not part of the summary judgment record.

Since Kent failed to offer any evidence regarding Bruno's qualifications))or any proof about Kropog's thoughts about or relationship with Bruno))it is difficult to see how Kent can raise a jury question over whether Kropog really believed that Bruno was more qualified than Kent. In fact, in reviewing the record, it is clear that Kent has not presented any evidence rebutting Kropog's asserted nondiscriminatory reason here, other than showing that various St. Ann supervisors (including Kropog) used to regard Kent as a good teacher and that some of Kropog's statements about Kent seem inconsistent with other proof. But Kent must do more than offer evidence that people at St. Ann and elsewhere regarded her as a competent teacher or that certain reasons that Kropog gave for not rehiring her seem suspect. Rather, Kent must point to sufficient proof in the record to permit a jury to infer that Kropog really did not consider Bruno more qualified than Kent and instead declined to rehire Kent because she suffered from chronic venous stasis. This Kent has not done.

Therefore, after reviewing the evidence as a whole, we determine that Kent has failed to create a genuine dispute of

material fact that Kropog's first stated nondiscriminatory reason was merely a pretext for discrimination.  Accordingly, the district court did not err in granting St. Ann's motion for summary judgment.

AFFIRMED.