# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 23, 2021

Lyle W. Cayce
Clerk

No. 20-50313

Ysleta del Sur Pueblo, *a federally recognized sovereign Indian tribe*,

*Plaintiff—Appellant*,

*versus*

City of El Paso,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CV-162

Before Owen, *Chief Judge*, Jones, and Wilson, *Circuit Judges*.
Per Curiam:*

To bring an action in federal court grounded on federal question jurisdiction, it must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331; 1362. Ysleta del Sur Pueblo filed an action in district court seeking a declaratory judgment that it was the rightful owner of some 111 acres possessed by the City of El Paso. Assessing the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50313

complaint, the district court found nothing to substantiate federal jurisdiction; consequently, it dismissed the Pueblo's complaint without prejudice. We AFFIRM.

## I.

The Pueblo is a federally recognized Indian tribe. The members of the Pueblo are descended from Tiwa or Tigua speaking Pueblo Indians. In the late seventeenth century, the Pueblo members were removed by the Spanish from one part of Spanish Mexico, now New Mexico, to another, the El Paso region. Roughly seventy years later, in 1751, the land the Pueblo occupied was allegedly granted by the Spanish crown to the Pueblo members as communal property. Over the ensuing century, Spanish Mexico rebelled against Spain and became the sovereign nation of Mexico; Texas rebelled against Mexico and became the sovereign Republic of Texas; Texas was annexed by the United States; and the United States and Mexico fought a war over the annexation. Ultimately, the Treaty of Guadalupe Hidalgo concluded the Mexican-American War in 1848 and confirmed the Rio Grande as the international border between Mexico and the United States.

Over time, the land now claimed by the Pueblo, which is located along Gateway East Boulevard and Zaragoza Road in El Paso, Texas, came into the possession of the City of El Paso. According to the Pueblo's complaint, throughout the nineteenth and early twentieth centuries the Texas legislature purported to transfer title to lands claimed by the Pueblo via the Spanish grant. In 2017, the Pueblo filed a declaratory judgment action against the City of El Paso in federal district court. The Pueblo styled its complaint as a "VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT CONFIRMING TITLE TO REAL PROPERTY" and sought "a declaratory judgment confirming [the Pueblo's] title to real property deriving from a Spanish grant to Plaintiff recognized by federal law, and the laws of Spain and

2

No. 20-50313

Mexico, and preserved by the United States in the Treaty of Guadalupe Hidalgo." The complaint requested the district court to issue an order "[c]onfirming that Plaintiff is and has been the rightful holder of title to the Property since 1751 and that the defendants are declared to have no estate, right, title or interest in or to the Property[.]"

Eventually, both the Pueblo and the City filed motions for summary judgment. Among its other arguments, the City asserted that the district court lacked subject-matter jurisdiction over the suit. The district court construed the City's motion as a motion to dismiss and a motion for summary judgment in the alternative.

After evaluating the Pueblo's complaint, the district court determined it did not have subject-matter jurisdiction. First, the court held that the Pueblo's "predicate cause of action" was premised on state law, not federal law. Relying on our precedent, the court held that the Treaty of Guadalupe Hidalgo did not provide the Pueblo an independent cause of action, and that no other federal law provides a cause of action to quiet title. Second, the court held that the Pueblo's asserted right to the property was not "a federally derived right and does not involve a substantial federal issue." Finally, the court held that the Pueblo did not assert a claim for aboriginal title but relied instead wholly on the Spanish land grant to establish title.

The district court dismissed the complaint without prejudice and denied the Pueblo's subsequent motion to amend the court's judgment to allow the Pueblo to amend its complaint. In its motion, the Pueblo essentially sought to file a wholly new complaint, clearly asserting several causes of action unmentioned in the initial complaint. The Pueblo appeals.

No. 20-50313

## II.

We first address the Pueblo's arguments that the district court had jurisdiction over the suit; then we address the Pueblo's contention that the district court abused its discretion by denying the motion to amend.

## A.

This court reviews rulings on subject-matter jurisdiction *de novo*. *Allen v. Louisiana*, 14 F.4th 366, 370 (5th Cir. 2021) (citing *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021)). A district court can find it lacks subject-matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "[W]e apply the same standard as the district court"; because that court ruled on the complaint alone, we similarly limit our analysis. *St. Tammany Parish, ex rel. Davis v. Federal Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quoting *Wagstaff v. U.S. Dep't. of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

We look to the "'well pleaded' allegations of the complaint" to evaluate if subject-matter jurisdiction exists. *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). "A federal question exists 'only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)).

No. 20-50313

Here, the Pueblo contends federal question jurisdiction exists because its claims arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331; 1362; *see also TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 682 (5th Cir. 1999) (holding that the analyses under §§ 1331 and 1362 are identical because the statutes have identical language). According to the Pueblo, this is so because (1) it asserts a claim of aboriginal title, (2) the Indian Non-Intercourse Act ("INIA"), 25 U.S.C. § 177, prohibits any alienation of the Pueblo's lands without congressional authorization, and (3) the treaty of Guadalupe Hidalgo provides an independent cause of action.[1]

But looking to the complaint itself, the Pueblo's claim does not provide any reference to federal law, apart from a passing mention of the Treaty of Guadalupe Hidalgo. Instead, the complaint seeks "a declaratory judgment confirming its title to real property deriving from a Spanish grant to Plaintiff . . . ." The Pueblo confirms this characterization of its claim in the complaint's prayer for relief, which requests a declaration that "Plaintiff is and has been the rightful holder of title to the Property since 1751 and that the defendants . . . have no estate, right, title or interest in or to the Property[.]" To the extent the Pueblo's complaint articulates any claim at all, it appears to be a trespass-to-try-title action to confirm title in the land— a state law claim. *See* Tex. Prop. Code Ann. § 22.001.

The Pueblo nonetheless contends that even though it is never mentioned, the complaint implicitly rests on a theory of aboriginal title. "Aboriginal title is a unique form of title to real property, loosely analogized to a 'perpetual right of occupancy' with an 'ultimate reversion in fee' to the sovereign." *Alabama-Coushatta Tribe v. United States*, 757 F.3d 484, 486 n.1

---

[1] In its reply brief, the Pueblo abandoned any argument related to the Treaty of Guadalupe Hidalgo, so we decline to address this purported ground for jurisdiction further.

(5th Cir. 2014) (quoting *Mitchel v. United States*, 34 U.S. (9 Pet.) 711, 746, 756 (1835)).  Aboriginal title is an equitable possessory interest held by Native American tribes "because of immemorial occupancy[.]"  *Nw. Bands of Shoshone Indians v. United States*, 324 U.S. 335, 338 (1945) (citing *United States v. Santa Fe Pac. R.R. Co.*, 314 U.S. 339, 345 (1941)); *see also Alabama-Coushatta Tribe*, 757 F.3d at 486 n.1 (citing *Johnson v. M'Intosh*, 21 U.S. (8 Wheat.) 543, 592 (1823)).  Here, the Pueblo's contention that its complaint implicitly alleges an aboriginal title claim is belied by the explicit text of the complaint.  The pleading expressly grounds the Pueblo's claim for relief not on alleged possession of the land from time immemorial, but on "title to real property deriving from a [1751] Spanish grant . . . ."

Nor is the INIA mentioned, or even alluded to, anywhere in the complaint.  The Pueblo asserts on appeal that the INIA, if applicable, may form part of its cause of action because the INIA would bar any alienation of its land without congressional approval.  But it is hardly indicative from *the complaint* that the Pueblo's right to relief "necessarily depends" on the INIA.  *Singh*, 538 F.3d at 338 (quoting *Franchise Tax Bd.*, 463 U.S. at 28).  Indeed, there is no allegation in the complaint that the INIA must be applied to invalidate purported conveyances in the chain of title of the land at issue because Congress did not approve the grants.  And the Pueblo makes no allegation that federal law generically bars the alienation of the Pueblo's claimed land.  The complaint only contains the bare assertion that the land belongs to the Pueblo by virtue of the 1751 Spanish land grant.  While perhaps an interesting question of title, it is one to be resolved by a Texas court, applying Texas law.

**B.**

In its Federal Rule of Civil Procedure 59(e) motion, the Pueblo sought to amend the district court's judgment to allow the Pueblo to file an amended

complaint pursuant to Federal Rule of Civil Procedure 15(b).  Denials of Rule 59(e) motions are generally reviewed for abuse of discretion.  *S. Constructors Grp. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993) (citing *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992); *Midland W. Corp. v. FDIC*, 911 F.2d 1141, 1145 (5th Cir. 1990)).  Here, "[a] threshold question is whether we are reviewing the denial under the standards applicable to Rule 59(e)— which favor the denial of motions to alter or amend a judgment—or under Rule 15—which favor granting leave to amend."  *Id.* (discussing interplay between Rule 59(e) and Rule 15; finding no abuse of discretion "even under the more liberal standards applicable to Rule 15" (citations omitted)).

The Pueblo contends that the district court erred by applying the more restrictive Rule 59(e) standard in denying its motion.  But even assuming *arguendo* the more permissive Rule 15 standard applied to the Pueblo's motion, as the district court observed,

> in its filings throughout this litigation, the Pueblo appears to concede . . . that it knew that both aboriginal Indian title and the Non-Intercourse Act were—in the Pueblo's own words— "critical aspect[s] of the case" well before the Court entered judgment . . . .   The Pueblo's own assertions here strongly suggest that the Pueblo could have raised the new allegations from its proposed Amended Complaint prior to Court's entry of judgment.

We discern no abuse of discretion in the district court's ruling.

## III.

Because even under a liberal construction of its complaint, the Pueblo asserted only a state law trespass-to-try-title action, the district court lacked federal jurisdiction over the case.  Accordingly, the district court's dismissal without prejudice of the Pueblo's complaint is

AFFIRMED.