CENTRAL SOYA COMPANY, INC., Plaintiff,

v.

COX TOWING CORPORATION et al., Defendants.

No. GC 74–90–S.

United States District Court, N. D. Mississippi, Greenville Division.

Jan. 19, 1977.

J. Robertshaw, Robertshaw & Merideth, Greenville, Miss., for plaintiff.

L. Carl Hagwood, Campbell & DeLong, Greenville, Miss., W. Scott Welch, III, Butler, Snow, O'Mara, Stevens & Cannada, W. Swan Yerger, Heidelberg, Woodliff & Franks, Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The remaining issue in the action sub judice concerns the claim of indemnity asserted in a cross-claim by defendant Southern Farm Bureau Life Insurance Company (Southern Farm) against its co-defendant, Mississippi Marine Transport Company (Mississippi Marine). The claim arises out of a mortgagor-mortgagee relationship. The subject of the mortgage is the M/V Mark Shurden ex Wildcat (M/V Wildcat) purchased by Mississippi Marine from defendant Cox Towing Company (Cox), a part of the purchase price having been advanced by Southern Farm.

The undisputed facts reveal that the M/V Wildcat was constructed by Mississippi Marine Corporation (not to be confused with Mississippi Marine Transport Company) under an agreement with Central Soya Company, Inc. (Central Soya) and entered the charter service of Central Soya at New Orleans, Louisiana, on February 17, 1972. The charter was for 48 months following its entry into service with an option to extend the charter for an additional 24 months. As provided in the charter, the Mississippi Marine Corporation assigned its rights under the charter to Cox who purchased the vessel from Mississippi Marine Corporation on February 14, 1972.

Defendant Mississippi Marine entered into a contract with Cox on December 18, 1973, to purchase the M/V Wildcat and paid $25,000 to Cox as earnest money. At the time the contract was executed, Central Soya had not filed any notice at the home port of the vessel that it claimed a lien thereon and had not filed suit to enforce any right which it claimed. The vessel, at the time of the purchase by Mississippi Marine, was not working for Central Soya but was working on a 30-day charter for the Upper Mississippi Towing Company.

Central Soya received rumors of the impending sale and on December 20, 1973, sent a telegram to L. B. Lampton, President of Mississippi Marine notifying him of the existence of the charter and of Central Soya's intention to enforce its rights thereunder. Upon receipt of the telegram, Lampton wrote Cox that Mississippi Marine understood that it was acquiring the M/V Wildcat free and clear of all encumbrances.

Relying upon the warranty of Cox, Mississippi Marine proceeded to complete the purchase and the M/V Wildcat was conveyed to it on January 2, 1974, for a cash consideration of $985,000. While Mississippi Marine was on notice of the claim of Central Soya, it relied upon the assurances of Cox that Central Soya's claim was unsubstantial.

After approximately 30 days, Mississippi Marine executed and delivered to Southern Farm a preferred ship mortgage on the M/V Wildcat securing an original indebtedness of $754,000. The ship mortgage was filed thereafter on February 12, 1974, with the United States Coast Guard office in Greenville, Mississippi, the home port of the Wildcat. At this time, there was no notice on file in the office of the Coast Guard of the charter rights claimed by Central Soya.

Contemporaneously with the delivery of the First Preferred Ship Mortgage a guaranty agreement was executed by Ergon, Inc., Leslie B. Lampton, R. L. Miller, J. A. Miller, Harold D. Miller, Jr., Kathryn W. Stone and Mark K. Shurden, guaranteeing the payment of the indebtedness of Mississippi Marine to Southern Farm. Leslie B. Lampton and Harold D. Miller, Jr., on behalf of Mississippi Marine, executed and delivered to Southern Farm upon the closing of the loan, a Mortgagor's Oath of Good Faith stating that "[t]here are no liens,

encumbrances, charges or mortgages, outstanding against said vessel [the M/V Wildcat], other than the lien of the foregoing mortgage."

Also, in connection with the application for the loan, Mr. Lampton, President of Mississippi Marine, executed and delivered to Southern Farm a statement which among other things, stated "[t]o induce you to accept a mortgage on two vessels [one of which was the M/V Wildcat]—the undersigned mortgagor [Mississippi Marine] hereby advises you—that there are no maritime liens, prior mortgages or other obligations or liabilities affecting the said vessels known to the undersigned mortgagor."

Southern Farm was not advised by anyone acting on behalf of Mississippi Marine that Central Soya claimed charter rights in the M/V Wildcat and this fact was first discovered by Southern Farm upon the filing of the complaint.

Central Soya asserted in the complaint that the rights generated by the charter constituted a first or prior lien against the M/V Wildcat, and sought damages for its breach in the sum of $2,000,000. This demand was later reduced to $1,214,122.84. Among others, not necessary here to mention, Southern Farm, Cox, John H. Cox, Jr., Mississippi Marine, and L. B. Lampton, were made defendants to the action. The only relief sought against Southern Farm was a finding that its mortgage was primed by the lien asserted by Central Soya.

The record reflects that the main targets of the suit were Cox and its owners. As between the defendants Southern Farm sought indemnity from Mississippi Marine for any exposure to liability and costs of defending the action and the latter sought similar indemnity from Cox.

Cox employed attorneys to represent it in the case. Mississippi Marine was represented by its regular attorneys. Southern Farm selected other attorneys to represent its interest.

This statement of the case justifies the observation that Cox, Mississippi Marine, and Southern Farm acted in unison to defend the case brought by Central Soya to enforce the charter and impress a lien on the M/V Wildcat for the damages suffered because of the alleged charter breach.

On the eve of the jury trial, the parties effected a settlement. Southern Farm was not required to make a contribution. The settlement figure was $505,700 of which Mississippi Marine contributed $20,000.

The mortgage executed by Mississippi Marine contains the following provisions: "To the payment of all attorneys' fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 8% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed."

In the action sub judice, Central Soya sought to create a maritime lien against the M/V Wildcat upon which Southern Farm held a first preferred ship mortgage and to relegate the lien thereof to a position inferior to the asserted maritime lien. Regardless of the merits of the claim it was necessary for Southern Farm to defend its position and protect its rights. The court is of the opinion that the language used in the mortgage, above-mentioned, obligated Mississippi Marine to furnish Southern Farm with a defense to the action.

Mississippi Marine does not really contest this issue. In fact, when the suit was filed, Mississippi Marine in effect recognized and assumed this responsibility. The attorneys representing Mississippi Marine, on September 27, 1974, shortly after the commencement of the action, offered to assume the defense of the case on behalf of Southern Farm. This offer was made through one of the partners in the firm who was also a stockholder and officer of Mississippi Marine.

The affidavit of Edgar Sentell, Esq., house counsel for Southern Farm, reflects that the offer was refused because the attorneys who would represent Southern

Farm were representing Mississippi Marine in the case. Southern Farm desired separate counsel who would be charged with the duty to protect Southern Farm's interest and would have no commitment or obligation to its indemnitor. Southern Farm felt this position well taken in light of the charges in the complaint of fraud and conspiracy on the part of Lampton and Mississippi Marine, and because of the further fact that Mississippi Marine did not disclose the charter controversy of which Mississippi Marine had knowledge before the loan was closed.

■ The general rule is stated in 42 C.J.S. *Indemnity* § 13, at 586, where the editor states:

As a general rule an indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees, and reasonable and proper legal costs and expenses, which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified, provided that under all the circumstances of the case he acts in good faith and with due diligence in prosecuting or defending such suits. (footnotes omitted).

The real question for the court to decide is whether Southern Farm acted in good faith in declining joint representation with attorneys also representing Mississippi Marine.

The competency of legal counsel for Mississippi Marine has never been questioned. Southern Farm's house counsel envisioned a need for legal help separate from that engaged by Mississippi Marine.

Southern Farm believed that its interest would be jeopardized if required to use the attorneys for Mississippi Marine in presenting the case to the jury.

The offer of Mississippi Marine to make the services of its attorneys available to Southern Farm was made on September 27, 1974. Southern Farm promptly notified Mississippi Marine by letter, dated October 11, 1974, that it would necessarily require separate counsel, and placed Mississippi Marine on notice that Southern Farm would expect indemnification for such reasonable attorney's fees, costs, expenses, losses, etc., as it necessarily incurred in defense of the suit. There was no response to the letter although the record reflects that the attorneys for Mississippi Marine were available to Southern Farm throughout the period of litigation.

■ The court cannot say that Southern Farm acted in bad faith in insisting upon separate counsel and in employing counsel of its own. The record reflects that perhaps there was duplication of effort since all defendants were united in a common cause or defense. This duplication, however, could not have been avoided since it was not reasonable for Southern Farm to employ counsel to participate in only designated portions of the litigation in preparing the case for presentation to the court and jury.

The court finds that Southern Farm is entitled to recover its costs, including reasonable fees for its attorneys.

The expense items are not in dispute. These aggregate $978.83 and will be allowed.

The attorney's fee, for the most part, is based upon an hourly rate of $60.00 per hour. The court is frequently called upon to allow fees in cases similar as the one sub judice. This court has allowed fees in a number of cases, using as a basis an hourly range from $30.00 to $45.00. *Armstead v. Starkville Municipal Separate School District*, 395 F.Supp. 304 (N.D.Miss.1975); *Ayers v. Western Line Consolidated School District*, 404 F.Supp. 1225 (N.D.Miss.1975).

■ Because the trial court regularly comes in contact with the reasonable fee question it has been said that the courts themselves are experts on the question. *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940); *Davis v. Board of School Commissioners of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976); *Massachusetts Mutual Life Ins. Co. v. Brock*, 405 F.2d 429, 435 (5th Cir. 1968). Additionally, the determination of reasonable fees for attorneys, is usually

left to the sound discretion of the trial court. *Weeks v. Southern Bell Telephone and Telegraph Co.*, 467 F.2d 95, 97 (5th Cir. 1972); *Culpepper v. Reynolds Metal Co.*, 442 F.2d 1078, 1081 (5th Cir. 1971).

The factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) have been utilized on a number of occasions in fixing a reasonable award of attorney's fees. These are (1) time and labor; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; and (11) the length and nature of the professional relationship with the client. *Johnson v. Georgia Highway Express, Inc.* 488 F.2d at 716–20.

The court has considered all of the factors set forth in *Johnson*. Also, the circumstances surrounding the parties in this litigation and the effective assistance rendered Southern Farm through counsel for Mississippi Marine and Cox in defending the position of all defendants. The court has reached the conclusion that a reasonable attorney's fee allowance to Southern Farm is $9,000.

An order will be entered providing that Southern Farm recover by way of indemnity from Mississippi Marine the total sum of $9,978.83 [attorney's fee allowance of $9,000, plus expense allowance of $978.83].