# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 01-60493
Summary Calendar

---

MAXAM, LTD.,

Plaintiff-Appellee,

VERSUS

STEVEN R. LANE,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Mississippi
m 3:99-CV-740-BN

---

October 14, 2002

Before JOLLY, JONES, and SMITH,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Granger, Thaggard & Associates, Inc. ("GTA"), agreed to auction property owned by Maxam, Ltd. ("Maxam"), in separate lots for future development as a subdivision. GTA placed Steven Lane in charge of marketing and researching the project, and Jack Granger served as auctioneer. During the auction, Granger, apparently in violation of the written guidelines for the auction, asked Lane to estimate the cost of building a road into the subdivision that would meet county standards.

Lane misrepresented the costs, and several bidders rescinded their sales contracts. Maxam settled with the rescinding bidders by voiding their sales contracts and returning a high percentage of their earnest money. Maxam then sued Lane for indemnity.

We affirm in part because the district court correctly awarded indemnity for the costs of commissions paid to GTA on the rescinded contracts. Concluding, however, that the court failed to assign a percentage fault to Granger as required by Mississippi law, we reverse in part.

I.

In 1997, Maxam purchased 187 acres of property, proposing to subdivide it and hold an absolute auction, which is an auction at which the seller must accept the highest bid received. Maxam contracted with GTA to conduct the auction. The "Auction Proposal and Agreement" specified that GTA would receive a 10% commission on all contracts for sale. If a parcel did not sell at the auction, GTA would list it for 180 days, and Maxam would pay a 10% commission on any subsequent sale.

GTA hired Lane to prepare for the auction. Lane advertised the sale and showed the property to prospective bidders. Auction materials informed the bidders that the property was being offered on an "as is" basis. The bidders also knew they would have to join a homeowners' association that would bear the cost of paving a road through the subdivision.

At the auction, Granger, who was Lane's supervisor, took the auctioneer stand to explain the rules. A bidder asked Granger about the cost of building a road. Granger asked Lane to answer, and Lane replied that he had received a bid of $150,000 to complete a road

that met the county's specifications. In fact, Lane had taken two bids from contractors not licensed as civil engineers, and neither contractor represented that his bid met county standards.

GTA sold all twenty-seven parcels in a series of sixteen contracts. The subsequently formed homeowners' association took bids to build the road and discovered that Lane's estimate did not reflect conformity with the county's standards; the homeowners' association received an initial, conforming bid of $500,000. Some of the successful bidders refused to close the sales, sought to rescind their sales contracts, and requested return of earnest money.

Maxam sued in federal court, under diversity jurisdiction, to consummate the sales. Six bidders sued in state court to rescind their sales contracts and recover their earnest money. Maxam settled with the six bidders by agreeing to refund approximately 62% of the earnest money paid by five of the bidders and 75% of the earnest money paid by the sixth.

That left approximately one-third of the property unsold. Maxam paid the funds out of its general revenues because GTA had retained the original earnest money to satisfy its 10% commission.

Maxam sued Lane for indemnity, alleging that his negligent misrepresentation had created Maxam's liability to the bidders. In the pretrial order, Lane requested an allocation of fault against Granger for asking Lane to estimate the cost of the road. Lane moved for summary judgment, which the court granted in part and denied in part. The court limited Maxam's pursuit of damages to the costs associated with the auction, legal expenses in its

2

litigation against the bidders, and interest on those damages.

The court then held a bench trial, during which Lane requested an allocation of fault analysis under MISS. CODE ANN. § 85-5-7(7). The court ruled in Maxam's favor and awarded it $23,657.22 for commissions paid on the rescinded contracts and $14,525,29 in attorneys' fees. Lane moved for new trial, or in the alternative, to alter or amend judgment under FED. R. CIV. P. 59, repeating the request for an allocation of fault. The court denied the motion, explaining that "[c]ounsel for Lane never mentioned the prospect of joint liability on the part of Granger" and that "Lane never made this argument during the bench trial and did not request a ruling on this issue by the Court."

Lane appeals the final judgment but asks us to review only the denial of his rule 59 motions for a new trial and to alter or amend the judgment. We review the denial of a motion for new trial to determine whether the court abused its discretion or misapprehended the substantive law.[1] We review for abuse of discretion the denial of a motion to alter or amend judgment. *Midland W. Corp. v. FDIC*, 911 F.2d 1141, 1145 & n.4 (5th Cir. 1990). We review *de novo*, as questions of law, the interpretation of a state's comparative fault

regime and the resulting fault allocations.[2] When ascertaining the law of a state, we look to the decisions of its highest court. *Labichie*, 31 F.3d at 351.

## II.

Lane argues that Mississippi's comparative fault statute required the district court to assess Granger's share of responsibility for misleading the homeowners. The court's oral ruling did not address Granger's potential liability. When Lane filed his rule 59 motion, the court refused to reconsider its fault allocation, explaining that Lane had failed to make this argument at or before trial. Lane consistently had argued that Granger bore some responsibility for altering the terms of the "as is" auction, so the district court erred by failing to evaluate this claim.

## A.

On their face, none of the district court's rulings satisfied Mississippi's requirement that the court consider Granger's possible liability. Mississippi law establishes a presumption that negligent tortfeasors bear only several liability.[3] Because the Mississippi fault regime relies primarily on several liability, it also directs

---

[1] *Munn v. Algee*, 924 F.2d 568, 575 (5th Cir. 1991) ("Because the availability of damages is a question of law, we do not afford the district court's decision any deference."); *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985) ("The decision to grant or deny a motion for new trial generally is within the sound discretion of the trial court and will not be disturbed unless there is an abuse of that discretion or misapprehension of the law.").

[2] *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999) ("[W]e review *de novo* the district court's conclusions of law, such as the effect to be given a settlement under Mississippi law . . . .") (citation omitted); *Labichie v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994) ("The apportionment of recovery costs under state law is a legal issue that we review *de novo*.") (citation omitted).

[3] MISS. CODE ANN. § 85-5-7(3) (1999); *Estate of Hunter v. Gen. Motors Corp.*, 729 So. 2d 1264, 1274 (Miss. 1999) ("The principal effect of § 85-5-7 is that it abolishes joint and several liability for up to 50% of the plaintiff's injuries and replaces it with several liability up to this amount.").

courts to "determine the percentage of fault for each party alleged to be at fault." MISS. CODE ANN. § 85-5-7(7). The Mississippi Supreme Court has interpreted the statute to require courts to determine the percentage fault attributable to all alleged nonparty tortfeasors.[4] Mississippi law plainly required the district court to assign fault percentages to both Lane and Granger.

In its original decision, the court did not obviously or directly address Granger's share of fault. When Lane moved for a new trial and an amendment of the judgment, the court held that he had waived his right to argue Granger's responsibility. The record belies the court's assertion.

A party can preserve an issue by making the argument in its pleadings, identifying it in the joint pretrial order, or trying it by consent.[5] Lane satisfies this test readily—he argued, at every stage of the proceeding, that Granger bore responsibility for the alteration of the bid's terms.

In his answer, Lane lists, as his first defense, Granger's responsibility for overseeing the auction. In his second defense, Lane argues that the acts or omissions of others actually caused the auction to go awry. The joint pretrial order describes one of Lane's legal issues as "[w]hether Jack Granger was negligent in performing his duties as auctioneer by requesting estimates of the road construction from the auction stand and whether said negligence, if any, is imputed to Maxam so as to reduce any recovery."[6] During his closing argument, Lane's counsel and the district court engaged in a lengthy discussion (reproduced in the appendix) about whether Granger should bear a portion of the fault and about the effect on Lane's liability.

Maxam makes only one argument to support the court's waiver finding—that after delivering its opinion from the bench, the court gave both parties an opportunity to request additional rulings or clarifications, but Lane's counsel failed to respond. This argument lacks merit.

Where a party has raised an argument at every juncture of the pretrial proceedings and at trial, it has given the opposing party and court sufficient notice. Lane did not have an obligation to repeat every argument he had made in pretrial motions and on the merits once the district court delivered an adverse, oral opinion. Waiting, digesting the opinion, and later asking the court to revisit its conclusions was a reasonable approach that should

---

[4] *Smith v. Payne*, __ So. 2d __, 2002 Miss. LEXIS 13, at *10 (Miss. Jan. 10, 2002) ("[A]ny tortfeasor, even absent ones, that contributed to the injury must be considered by the jury when apportioning fault.") (citation omitted); *Estate of Hunter*, 729 So. 2d at 1276 ("[T]he term 'party,' as used in § 85-5-7(7) refers to any participant in an occurrence which gives rise to a lawsuit, and not merely the parties to a particular lawsuit or trial.").

[5] *Mongrue v. Monsanto Co.*, 249 F.3d 422, 427 (5th Cir. 2001) ("A party has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order, or if the parties have tried the issue by consent . . . ."); *Portis v. First Nat'l Bank*, 34 F.3d 325, 331 (5th Cir. 1994) (same).

[6] The joint pretrial order notes Maxam's objection that Lane failed to plead this issue, but we have long held that the joint pretrial order—not the initial pleadings—governs the issues to be tried. *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996).

not sacrifice Lane's right to an appeal.

## B.

Maxam argues that Lane did not establish a factual basis for Granger's liability, but both Lane's proof and the district court's findings suggest that the court should have addressed Granger's potential liability. Lane introduced evidence that the parties had advertised the auction as an "as is" sale. Maxam intended for the bidders to purchase the lots without guarantees or frills. Granger served as auctioneer and Lane's supervisor. At the auction, a bidder asked about the estimated cost of building a road. Despite the agreement between Maxam and GTA to offer the lots "as is," Granger requested that Lane share the estimates for a road. Lane argued that Granger negligently decided to provide an answer to the bidder.

In its bench ruling, the district court found that providing *any* information about the cost of the road should have raised a red flag to Lane. The court noted that Lane should have second-guessed Granger's request and consulted with Granger privately before answering the question. Although we do not presume to pass on the ultimate question of Granger's fault, if any, both Lane's evidence and the district court's factual findings suggest the court at least should have *considered* Granger's share of liability.

## C.

Maxam urges us to interpret the district court's decision as impliedly finding that Granger bore no fault. Maxam points to a line of cases in which, despite the court's silence, we have implied factual findings consistent with the record and the court's broader rulings.[7] In the instant case, however, the rulings are not necessarily consistent with an implied finding that Granger bore no fault.

In its oral bench ruling, the court intimated that Lane should have refused to answer Granger's question about road estimates because of the nature of "as is" offers; this suggests that Granger may have acted improperly by posing the question as an auctioneer. The denial of Lane's rule 59 motion describes the argument as waived, confirming that the court did not consider it in the original decision. We will not imply a finding of fact where the court's statements and rulings suggest it did not resolve the question.

## III.

Lane maintains that the district court improperly included the commissions that Maxam paid on the rescinded contracts in its indemnity award. The court considered those costs indemnifiable as a direct consequence of Lane's misrepresentation and the bidders' rescission.

Mississippi's indemnity doctrine permits innocent payers of judgments and settlements to recover money from the person actually responsible. *Bush v. City of Laurel*, 215 So. 2d 256, 259 (Miss. 1968) (citing 42 C.J.S. § 20 (1944)). A person seeking non-contractual

---

[7] *Texas Mortgage Servs. Corp. v. Guadalupe Sav. & Loan Ass'n*, 761 F.2d 1068, 1075-76 & n.7 (5th Cir. 1985) (inferring from three specific fact findings and record that bank had promised to maintain separate accounts); *Clinkenbeard v. Cent. Southwest Oil Corp.*, 526 F.2d 649, 652-53 (5th Cir. 1976) (implying finding about duration of agency relationship where district court had based its ruling on the existence of formal agency relationship).

implied indemnity must prove two elements:

> (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and

> (2) it must appear that the claimant did not actively or affirmatively participate in the wrong.

*Hartford Cas. Ins. Co. v. Halliburton Co.*, __ So. 2d __, 2001 Miss. LEXIS 247, at *24 (Miss. Sept. 27, 2001) (citations omitted). If the person seeking indemnity paid the damages under a settlement, he also must prove that he settled under compulsion and paid a reasonable amount. *Keyes v. Rehab. Ctrs., Inc.*, 574 So. 2d 579, 584 (Miss. 1990).

Through no fault of its own, Maxam forfeited the commissions to GTA without selling the lots. Maxam had agreed to pay GTA commissions for the sales contracts formed at auction or within 180 days after the auction. After the all the lots sold at auction, Maxam permitted GTA to retain the earnest money as partial satisfaction of its commissions. When six bidders rescinded their sales contracts because of Lane's negligence, Maxam settled with them by permitting them to abandon the purchase and refunding a high percentage of their earnest money. Maxam lost money from three sourcesSSthe abandonment of the sale, the refund of earnest money, and the commissions paid on invalid contracts for sales.

Presumably because Maxam could re-sell the property and avoid losing the actual sale price and earnest money, the district court focused on the wasted commissions. The court identified commissions charged and retained on the rescinded contracts as fruitless auction costs and ruled that Lane should indemnify Maxam for those costs. Lane concedes that the commissions satisfy the general requirements set forth by Mississippi's indemnity doctrine, but he has two specific objections.

Lane argues that because the district court describes its award as one for costs, the court was limited to awarding attorneys' fees and litigation costs. This contention is somewhat puzzling.

The primary purpose of indemnity is to compensate the initially liable party for paying out an award or settlement, not for paying the incidental attorneys' fees, which are recoverable only because the cost of the underlying judgment or settlement is recoverable.[8] A court also may award costs incidental to the equitable remedy of rescission.

The wasted auction costs incidental to the bidders' rescission are not analytically distinct from the wasted litigation costs incidental to a defending against a potential judgment or negotiating a settlement. The court employed the commission costs as a useful estimate of those wasted auction costs, and Lane does not

---

[8] *Celotex Corp. v. Becknell Constr., Inc.*, 325 So.2d 566, 568 (Miss. 1976) ("The general rule is that an award of attorneys' fees in indemnity cases is limited to the defense of the claim indemnified against."); *Bush*, 215 So. 2d at 259-60 (explaining that right to indemnity for attorneys' fees stems from right to indemnity for the underlying judgment or settlement); *Mims v. Frady*, 461 F. Supp. 736, 741 (N.D. Miss. 1978) (awarding amount paid to satisfy judgment and incidental attorneys' fees); *Cent. Soya Co. v. Cox Towing Corp.*, 431 F. Supp. 502, 505 (N.D. Miss. 1977) (same).

6

explain why this proxy is inaccurate.[9]

Lane then avers that GTA had no entitlement to the commissions withheld because Lane worked for GTA and it was vicariously liable for his actions. The strongest version of this argument merely restates Lane's earlier contention that Granger bore some responsibility for the misrepresentations. Lane does not identify a single other responsible GTA employee.

To the extent Lane is arguing that the court erred by shifting the full commission costs because Granger was partially responsible, the court, on remand, will make an adjustment by setting explicit fault percentages and adjusting the award. To the extent Lane bases his argument on the nature of *respondeat superior* liability, he misunderstands it.

Under *respondeat superior*, the negligent employee remains primarily liable, while the employer has only secondary liability. The injured third party always has the option of suing the negligent agent instead of his employer.[10]

If the injured third party sues the employer, then the employer will have a right to bring an indemnity suit against the employee.[11] If Lane bears complete responsibility for the bidders' rescissions, he, rather than Maxam or GTA, ultimately should bear the cost of the lost and wasted commissions.

For the reasons we have explained, the district court's inclusion of the commissions in the indemnity award is AFFIRMED. The assignment of total fault to Lane is REVERSED and REMANDED for further proceedings consistent with this opinion.

APPENDIX

MR. WILLIAMS: [W]e've asked the court to consider the comparative negligence of both Jack Grange and Steve Lane, because there was not a problem until the auctioneer on the auction stand asked for input on this estimate.

---

[9] Lane contends that the district court should have used the cost of re-selling the lots as the proper measure, but he does not explain why this standard would be superior. The past commissions are the costs actually wasted and are the more logical source for estimating the costs Maxam incurred in the transaction that Lane rendered ineffective.

[10] *Leathers v. Aetna Cas. & Surety Co.*, 500 So. 2d 451, 456 (Miss. 1986) ("[O]ur general rule in tort is that the agent or servant, the one whose conduct has rendered his principal liable, has individual liability to the plaintiff."); RESTATEMENT (SECOND) OF AGENCY § 330 (1958) ("A person who tortiously misrepresents to another that he has authority to make . . . a representation on (continued...)

[10](...continued) behalf of a principal whom he has no power to bind, is subject to liability to the other in an action of tort for loss caused by reliance upon such misrepresentation."); RESTATEMENT (SECOND) OF AGENCY § 350 (1958) ("An agent is subject to liability if, by his acts, he creates an unreasonable risk of harm to the interests of others protected against negligent invasion.").

[11] *Leathers*, 500 So. 2d at 453 (explaining that principal will often have indemnity rights against agent for his tortious acts); RESTATEMENT (SECOND) OF AGENCY § 401 (1958) ("An agent is subject to liability for loss caused to the principal by any breach of duty."); 2 Dan B. Dobbs, THE LAW OF TORTS 906 (West 2001) ("When the employer who is not personally chargeable with tort is held liable for the tort of an employee, the employer has the right of indemnity from the employee.").

7

Had there never been any question asked about the road cost, then I would say the contract is patently clear that it's as is, where is. But it's not until Jack Granger asked Lane for those estimates that we even get this $150,000 figure announced from the stand.

THE COURT: All Right. Lane testified that he wished his boss had not asked him that.

MR. WILLIAMS: Yes, sir.

THE COURT: Which would indicate that he clearly knew that he should not answer that question. And he did not argue with his boss, Mr. Granger, about it. He simply answered it. He didn't have a little side conference with Mr. Granger that "Look, we're getting ready to get ourselves in trouble her." He simply answered. Granger is not being sued. Lane is being sued. How does all of that work out?

MR. WILLIAMS: Well, that's correct. Granger is not being sued in this case; but it's been our position ever since we filed our initial answer that the wrong that was committed during this auction, if any, resulted in partSSin large part, to Granger asking the question in the first place.

And I think that under the present status of Mississippi law, under 8557, we're entitled, whether this was a jury trial or a bench trial, to point the finger at any party that's alleged to be at fault. I think that's what the decision of the Mississippi Supreme Court holds in *Estate of Hunter*; that if there is another party that's alleged to be at fault, then the court can consider the negligence of that party and allocate fault to a party that's not even in court.

So that's what we're saying. And the question, quite simplySSand I think I asked Mr. Rotenstreich this about Jack Granger's question in the first place. What would a reasonable auctioneer have done when asked how much the road is going to cost?

Well, I would submit that a reasonable auctioneer would have gone back to the terms of the bidders' acknowledgment agreement and said, "We're not here about the road. We're not here to talk about the cost of the road. It doesn't matter if it's a penny or a million dollars. We're not here to talk about that." But inviting a response, that's were I think the negligence of Granger comes in.

THE COURT: Does it make any difference that both Granger and Lane are employees of the auction company?

MR. WILLIAMS: I don't know if itSSif that makes any difference at all if you have two different parties whose combined negligence leads to a wrong. I think if it's possible for this courtSSI'm sorry.

THE COURT: What parties' combined negligence did that? Was it Lane and Granger andSSwhat's theSS

MR. WILLIAMS: Granger, Thaggard & Associates?

THE COURT: Yes, sir.

MR. WILLIAMS: Well, it seems to be that this an issue that could have beenSS

THE COURT: Are there three parties among whom to apportion fault according to your theory or are there only two?

MR. WILLIAMS: I'd say that there's only two parties, because if there was a wrong that was committed, we can put a dollar amount on that. If the court were to then allocate faultSSfor instance, if the damage, just for the sake of making this easy, was $100,000 and the court found that Jack Granger was 60 percent at fault and Steve Lane was 40 percent at fault, then, you know, each would be responsible for 60,000 and 40,000. The total amount would still be 100,000.

And, ultimately, if that is passed back to GTA,

they still only pay $100,000. So I think there's only two parties that we're talking about. And whether or not that gets imputed back to GTA is just a question of respondeat superior.

So I think that's my presentation on the negligent misrepresentation, unless your Honor has any other questions you'd like for me to address.

THE COURT: All right. Thank you.